# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**FILO HARRIS TURNER, III,**

    **Petitioner,**

**v.**                                            Case No. 3:17cv472-MCR/CAS

**JULIE L. JONES, Secretary**
**Florida Department of Corrections,**

    **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On July 12, 2017, Petitioner Filo Harris Turner, III, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, and he filed an amended petition on August 23, 2017, ECF No. 4. Petitioner challenges his sentence imposed by the First Judicial Circuit Court, Escambia County, on September 20, 2011, following "straight up" pleas of nolo contendere on charges of bank fraud, possession of a controlled substance, and grand theft. *See* ECF No. 4[1]; Ex. A at 5, 5I. On February 13, 2018, Respondent filed a motion to dismiss the § 2254 petition as untimely, with exhibits. ECF No. 10. Petitioner filed a reply on April 25, 2018, with an exhibit. ECF No. 14.

---

[1] Hereinafter, all citations to the state court record, "Ex.=," refer to exhibits submitted with Respondent's motion to dismiss, ECF No. 10.

The matter was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## PROCEDURAL HISTORY

On September 20, 2011, following his entry of a nolo contendere plea, Petitioner was adjudicated guilty on all counts: bank fraud, possession of marijuana under 20 grams, and grand theft.[2]  Ex. B at 164. He was sentenced to a ten-year prison sentence for Count 1, time served as to Count 2, and five years in prison as to Count 3.  *Id.* at 164-65. Petitioner appealed the judgment and sentence imposed in both cases to the First District Court of Appeal (DCA).  *Id.* at 181.  On December 3, 2012,

---

[2] Petitioner was originally charged with ten counts of writing worthless checks (three counts were for values of $150 or more and seven were for values less than $150) and one count of grand theft ($300 or more but less than $5,000).  Ex. A at 2.  In an amended information filed on April 18, 2011, in Case No. 2010-CF-4928, Petitioner was charged with bank fraud and possession of cannabis (less than 20 grams). *Id.* at 5.  In Case No. 2010-CF-5354, Petitioner was charged in an amended information for one count of grand theft ($300 or more but less than $5,000).

the First DCA per curiam affirmed the case without a written opinion. Ex. H at 1.

On January 4, 2013, Petitioner filed a motion to reduce or modify sentence, pursuant to Florida Rule of Criminal Procedure 3.800. Ex. I. On March 1, 2013, the state trial court denied Petitioner's motion on the merits. Ex. J.

On January 23, 2015, Petitioner filed a motion for post-conviction relief in the state trial court. Ex. K at 22. Petitioner stated he was entitled to relief because his trial counsel, Mr. Morris, failed to advise Petitioner that the State could seek Habitual Felony Offender (HFO) status sentencing in his case, which would increase the length of his sentence. *Id.* at 24. Had he been informed of the potential enhanced sentence, Petitioner argued, he would have accepted a plea offer from the State for a five-year prison sentence. *Id.* The State responded with a motion to dismiss the petition for untimeliness. *Id.* at 34. Petitioner claimed Mr. Morris refused to file his 3.850 motion and did not respond to Petitioner's numerous letters about the two-year deadline to file his state habeas petition. *Id.* at 37. Petitioner asserted that his attorney abandoned him, which entitled him to equitable tolling. *Id.* at 38.

On October 15, 2015, the state trial court granted an evidentiary hearing on the issue of timeliness. *Id.* at 41. Following the hearing, on February 26, 2016, the state trial court denied the State's motion to dismiss and allowed the State to respond to the merits of Petitioner's motion for post-conviction relief. *Id.* at 59. The State requested an evidentiary hearing because "[t]he nature of this claim related to communication between the defendant and his attorney that would not have been made on the record" and the evidentiary hearing was "necessary to supplement the record." *Id.* at 61. The evidentiary hearing was granted and occurred May 10, 2016. *Id.* at 65. On June 6, 2016, the state trial court denied Petitioner's motion for post-conviction relief on the merits. *Id.*

Petitioner appealed the denial of post-conviction relief to the First DCA. *Id.* at 87. On April 20, 2017, the First DCA per curiam affirmed the case without a written opinion. Ex. Q. On May 8, 2017, Petitioner filed a motion for rehearing, which the First DCA denied on June 6, 2017. Ex R. The mandate issued on June 22, 2017. Ex Q. On July 12, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. ECF No. 1; *see* ECF No. 4.

## ANALYSIS

### § 2254 Petition is Untimely

Petitioner has filed a pro se petition for writ of habeas corpus under Title 28, United States Code, section 2254. ECF Nos. 1 and 4. Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitation period starts on (A) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," (B) the date on which an unconstitutional impediment which prevented the applicant from filing is removed, (C) the date on which a right, if recently recognized by the Supreme Court, is made retroactively applicable to cases on collateral review, or (D) the date on which facts of the claims presented could have been discovered through due diligence. *Id*. When a proper application for post-conviction relief has been filed with the State court, time will be tolled while the claim is pending. *Id.*

Petitioner was sentenced on September 20, 2011, and the First DCA per curiam affirmed his direct appeal without an opinion on December 3, 2012. Ex. B at 164; Ex. H at 1. Petitioner had ninety (90) days from the

issuance of the decision in which to file a petition for certiorari review with the U.S. Supreme Court.  See 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13.  Petitioner did not appeal the decision, so his conviction became final on Monday, March 4, 2013.[3]  Absent any tolling, Petitioner had until March 4, 2014, to file his federal habeas corpus petition.  See Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (stating that limitations period ends on anniversary date of triggering event); Downs v. McNeil, 520 F.3d 1311, 1311 (11th Cir. 2008) (using anniversary method).

      Petitioner's one-year AEDPA limitations period began on March 4, 2013, and continued to run until January 23, 2015, when Petitioner filed a motion for post-conviction relief in the state trial court.  Ex. K at 22.  At this point, the one-year limitations period had elapsed.  The post-conviction motion did not restart the AEDPA time because no time remained for Petitioner to file his § 2254 petition.  Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired."). The state trial court found Petitioner was entitled to proceed on the merits of his Rule 3.850

---

[3] Though the First DCA issued their opinion on December 3, 2012, and the ninety (90)-day period ended on March 3, 2013, that deadline fell on a Sunday. Therefore, Petitioner had until Monday, March 4, 2014, to file his petition.

motion. Ex. K at 55, 59.  The court did not make a factual finding as to when Petitioner hired his attorney or when Petitioner was abandoned.  *Id.* at 55.  Instead, the court allowed the petition to proceed and later denied it on the merits.  *Id.* at 59.

In his § 2254 petition, Petitioner claims extraordinary circumstances of attorney abandonment during his state habeas proceedings caused his federal petition to be untimely.  ECF No. 4.  Respondent filed a motion to dismiss the petition as untimely, even if equitable tolling applied, because Petitioner did not hire Mr. Morris for post-conviction work in the instant case until an unknown date in March 2014.  ECF No. 10.  If Mr. Morris was hired no later than March 1, 2014, Respondent claims, the circumstances that caused his petition to be untimely would not have arisen until after 360 days of AEDPA time had elapsed.  ECF No. 10 at 13.  Assuming *arguendo* that Petitioner's period of equitable tolling began on March 1, 2014, Petitioner would have then had five days remaining of his one-year limitations period to file his § 2254 petition.  The Rule 3.850 motion, filed January 23, 2015, tolled the AEDPA time until the First DCA issued its mandate on June 22, 2017.  *See* Ex. Q.  Petitioner did not file his § 2254 petition until July 12, 2017, twenty (20) days after the mandate issued.

ECF No. 1.  Therefore, concludes Respondent, the § 2254 petition is untimely.

Petitioner claims that his § 2254 petition is timely under equitable tolling.  ECF Nos. 4, 14.  Petitioner filed a reply, with an attachment, to Respondent's motion to dismiss, claiming that Mr. Morris was hired in March 2013, not March 2014.  ECF No. 14.  Petitioner asserts March 2014 is not when Mr. Morris was hired and that Respondent relied on an altered version of Petitioner's motion for post-conviction relief in citing this date.  *Id.* at 2-3.

In Respondent's Exhibit K, Petitioner's motion for post-conviction relief states: "[T]he defendant hired Brandon S. Morris, Esquire in March of 2014 and paid him to handle the Post Conviction Relief issues that were then pending before the Court in the instant case…."  Ex. K at 23.  The last digit of the year is hand-written, with the original typed digit crossed through.  *Id.*  Petitioner's Exhibit 1, a copy of Petitioner's motion for post-conviction relief, states: "[T]he defendant hired Brandon S. Morris, Esquire in March 2013 and paid him to handle the Post Conviction Relief issues that were then pending before the Court in the instant case…."  ECF No. 14 at Ex. 1.  The state trial court did not make a factual finding as to when Mr. Morris was retained by Petitioner and Mr. Morris did not file a notice of

appearance in the instant case. Ex. K at 54 ("Mr. Ridlehoover: Judge, there were two other cases, case No. 2011 4524 and 4525, which, both Mr. Morris and Mr. Tray Parnell entered appearances, and which resulted in a modified judgment…. There were no notices of appearance filed in any other case except those two."). If Petitioner hired Mr. Morris in March of 2013 and Petitioner was entitled to equitable tolling for the period from March 2013 through January 23, 2015, then this petition should be considered timely. Because the Court cannot resolve this issue on this record and the parties' attachments, Respondent's motion to dismiss should be denied.

<u>Claim of Ineffective Assistance of Trial Counsel Lacks Merit</u>

In his § 2254 petition, Petitioner raises only one ground: "Ineffective assistance of counsel for failing to properly advise the defendant as to the maximum sentence at the time of the plea violating his 6th Amendment rights". ECF No. 4 at 4. In particular, Petitioner asserts that Mr. Morris failed to inform him that he could be sentenced as a habitual felony offender, which led to Petitioner's decision to reject a five-year plea offer from the State. ECF No. 4 at 5-6.

The state trial court denied post-conviction relief on this claim. Ex. K at 65. The state trial court analyzed Petitioner's allegation of ineffective

assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, Petitioner must prove his attorney's performance was deficient and that he was prejudiced by the deficiency.  *Id.*  Petitioner must show his counsel's performance was unreasonable considering the circumstances, and "scrutiny of counsel's performance must be highly deferential."  *Id.* at 689-90 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance….").

Additionally, the state trial court addressed the factors from Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013): to show prejudice, Petitioner must show (1) he would have accepted the plea offer if he had been advised correctly, (2) the prosecutor would not have withdrawn the offer, (3) the offer would have been accepted by the court, and (4) the conviction or sentence would have been less severe than the one imposed.  *See* Missouri v. Frye, 566 U.S. 134, 147 (2012); Lafler v. Cooper, 566 U.S. 156, 164 (2012).

On appeal, the First DCA per curiam affirmed the case without an opinion.  Ex. H.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d);

Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). The record supports the state court findings.

Petitioner's claim that he would have taken the plea offer and, thus would not have received a greater sentence but for Mr. Morris's failure to inform him of his potential HFO status is misguided. ECF No. 4 at 5-6. His sentence resulted from two factors of which Petitioner was aware: the prosecutor changed mid-way through the case and the new prosecutor charged Petitioner with bank fraud, an increase from several third-degree felonies to a second-degree felony charge. Ex. L at 116; *see also* § 832.05 Fla. Stat. (2004); § 655.0322 Fla. Stat. (2014). At the time of the original plea offer, Petitioner was charged with ten (10) counts of worthless checks and one count of grand theft by then-Assistant State Attorney (ASA) John Dickinson. Ex. A at 2. After Petitioner rejected the plea, the State (under ASA John Dubose) filed an amended information and charged Petitioner with one count of bank fraud and one count of possession of cannabis (less than 20 grams). Ex. A at 5.

Though the State sought to charge Petitioner as a habitual felony offender after Petitioner rejected the plea offer, the State failed to prove Petitioner was an HFO. *See* Ex. L. at 95 ("THE COURT: Were you sentenced ultimately as a habitual felony offender? THE DEFENDANT: No

sir, I was not.… My attorney, Mr. Morris, was able to successfully challenge the HFO."). Petitioner's sentence resulted from the amended information with the bank fraud charge—which carried a more severe penalty—not HFO status.

Petitioner's claim fails the Strickland deficiency prong. The state trial court found Petitioner had not been misadvised and Mr. Morris's performance was not unreasonably deficient. Ex. K at 67. Mr. Morris's testimony at the evidentiary hearing supports the findings and conclusion of the state trial court. Mr. Morris testified that he informed Petitioner about the possibility of receiving an enhanced sentence, that the State was "prepared to file bank fraud charges," and that Petitioner expressed concerns about being sentenced as a Prison Release Reoffender (PRR). *Id.* at 66-67; *see also* Ex. L at 105. Mr. Morris was questioned by the Court directly:

> The COURT: …There was an open five-year offer, five years in state prison. You were told that there would be a new prosecutor, and the new prosecutor was going to revoke the plea offer and file bank charges—bank fraud charges. You communicated the fact to the defendant that, one, he could still take the five years, and, two, if he didn't, it was going to be revoked, and they might file bank fraud charges.
>
> [MR. MORRIS]: That's correct.
>
> The COURT: And then he, based on—after you told him that, he rejected the five years.

> [MR. MORRIS]: Right.  The discussion went further than that, though.

*Id.*  Petitioner testified he was aware there would be a change in prosecutors and there was a possibility that the charges would be escalated to bank fraud.  *See* Ex. L at 116.  Petitioner stated initially that he was aware of what an HFO designation was prior to the instant case, but later claimed he did not know about HFO designation until after he rejected the plea offer.  *Id.* at 119-120.  The court found Petitioner's testimony was not "credible in light of his prior history and the testimony that he was concerned about sentencing enhancements at the time of the State's offer."  Ex. K at 67.  The court specifically accepted Mr. Morris's testimony over Petitioner's testimony.  That court sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings.  *See, e.g.*, Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d).

Even assuming Mr. Morris's performance was deficient, Petitioner has not shown that he was prejudiced by the deficiency.  Petitioner must show he would have taken the plea offer if he had been advised correctly.  Alcorn, 121 So. 3d at 422 (Fla. 2013).  Petitioner claims he would have taken the plea offer if he had known that the State could charge him as an HFO.  ECF No. 4 at 5.  The court may consider a defendant's statements

as evidence that there was a reasonable probability that he would have taken the plea offer if he was correctly advised, but the court is "not precluded from" rejecting these statements. Alcorn, 121 So. 3d at 431-32 (Fla. 2013).

Petitioner's subsequent actions undermine his claim. When Petitioner was offered a plea for a ten-year sentence under the bank fraud charge, fully informed of the State's intent to seek HFO status, he rejected the offer and made a "straight up" plea to the court. See Ex. L at 117-120. Furthermore, Mr. Morris testified that Petitioner's decision to reject the plea offers was a defense strategy. Id. at 106. Petitioner opted to try to push the case to trial with the hope that the State Attorney would not file a notice of HFO in an attempt to have the case dismissed due to evidentiary issues in the State's case. Id. Petitioner has not shown that he would have accepted the plea offer if he had been aware of his HFO status. Petitioner also fails to support his claim that Mr. Morris was ineffective and that this deficiency prejudiced Petitioner's case.

Finally, Petitioner has not shown the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C.

§ 2254(d)(1)-(2); *see also* Cullen v. Pinholster, 131 S.Ct. 1388, 1403-04 (2011) (holding that a state court's determination was not unreasonable where defendant failed to rebut presumption of competence).  Therefore, Petitioner is not entitled to relief, and this ground, if addressed on the merits, should be denied.

## CONCLUSION

Based on the foregoing, Petitioner Filo Harris Turner III is not entitled to federal habeas relief.  The amended § 2254 petition (ECF No. 4) should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner cannot make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation

omitted). Therefore, the Court should deny a certificate of appealability in its final order. Leave to appeal in forma pauperis should also be denied, as an appeal would not be taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

The second sentence of Rule 11(a) provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Petitioner shall make any argument as to whether a certificate should issue by filing objections to this report and recommendation.

## RECOMMENDATION

It is therefore respectfully **RECOMMENDED** that Respondent's motion to dismiss (ECF No. 10) be **DENIED**, the amended § 2254 petition for writ of habeas corpus (ECF No. 4) be **DENIED**, a certificate of appealability by **DENIED**, and leave to appeal in forma pauperis be **DENIED**.

IN CHAMBERS at Tallahassee, Florida, on June 12, 2018.

                                        s/ Charles A. Stampelos  
                                        **CHARLES A. STAMPELOS**  
                                        **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**